**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

DAVE SARNOWSKI,

    Plaintiff,

vs.                                                                                               No. CV 06-941 MV/LAM

GRANT COUNTY, N.M.,
HARRY BURGESS, ROCKY
TAFOYA, JACK HYATTE,
JOSEPH ARELLANO, CHARLES
KELLY, HENRY TORRES,
MIKE OLIVER, DANNY UDERO,
LORENZO RIVERA, KURT
CARLSON, LOUIE TAVIZON,
JEREMY SANCHEZ, MATT FRY,
SCOTT McCLARIN, and
Others Not Yet Known at This Time
Denoted as John and Jane Does 1-25,

    Defendants.

**MEMORANDUM OPINION AND ORDER**

This matter comes before the Court on: Defendant Grant County's Motion to Dismiss, filed 10/18/06 (Doc. 2); Plaintiff Dave Sarnowski's Motion to Strike, filed 11/09/06 (Doc. 3); Defendants Joseph Arrellano's, Kurt Carlson's, Charles Kelly's, Lorenzo Rivera's, Jeremy Sanchez's, and Henry Torres's Motion to Dismiss, filed 11/13/06 (Doc. 4); Plaintiff's Second Motion to Strike, filed 12/01/06 (Doc. 21); Defendants Grant County's, Arrellano's, Carlson's, Kelly's, Rivera's, Sanchez's, and Torres's Second Motion to Dismiss, filed 12/04/06 (Doc. 22); Defendants Harry Burgess's, Matt Fry's, and Jack Hyatte's Motion to Dismiss, filed 1/08/07 (Doc. 47); Defendants Scott McClarin's, Louie Tavizon's, and Mike Oliver's Motion to Dismiss, filed 4/16/07 (Doc. 53); Defendant Danny Udero's Motion to Dismiss, filed 4/26/07 (Doc. 55); and Defendant Mike Oliver's Motion to Dismiss, filed 5/3/07 (Doc. 59). Having carefully reviewed the parties' briefs, the record,

and the relevant law, the Court concludes that the Defendants' requests for dismissal should be granted in part and denied in part; that Plaintiff's motion to strike should be denied; and that his complaint should be dismissed.

## I. RELEVANT LEGAL STANDARDS

The Defendants' motions are brought pursuant to FED. R. CIV. P. 12(b), and all raise the same arguments. The Defendants bear the burden of showing that, viewing the well-pleaded factual allegations in Sarnowski's complaint as true and in the light most favorable to Sarnowski, he has not alleged "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, ___ U.S.___, 127 S. Ct. 1955, 1974 (2007); *MacArthur v. San Juan County*, ___ F.3d ___, 2007 WL 2045456, *5 (10th Cir. 2007) (discussing rule 12(b)(6) standard).

In reviewing a pro se complaint, the court applies the same legal standards applicable to pleadings that counsel drafts, remaining mindful that the complaint must be liberally construed. *See Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). But "[t]he broad reading of the plaintiff's complaint does not relieve the plaintiff of alleging sufficient facts on which a recognized legal claim could be based." *Id.*

> [T]he [pro se] plaintiff whose factual allegations are close to stating a claim but are missing some important element that may not have occurred to him, should be allowed to amend his complaint. Nevertheless, conclusory allegations without supporting factual averments are insufficient to state a claim on which relief can be based. This is so because a pro se plaintiff requires no special legal training to recount the facts surrounding his alleged injury, and he must provide such facts if the court is to determine whether he makes out a claim on which relief can be granted. Moreover, in analyzing the sufficiency of the plaintiff's complaint, the court need accept as true only the plaintiff's well-pleaded factual contentions, not his conclusory allegations.

*Id.* (citations omitted).

## II. SARNOWSKI'S ALLEGATIONS

Accepting the allegations in his complaint as true, in August 2002 Sarnowski was hired as a correctional officer for the Grant County Detention Center ("GCDC"). *See* Am. Compl. at ¶ 28 (Doc. 5). Before Sarnowski's six-month probationary period was completed, six of his peer correctional officers (Defendants Frye, Udero, Rivera, Sanchez, Tavizon, and McClarin), none of whom had supervisory authority over Sarnowski, submitted affidavits complaining of Sarnowski's work performance to the GCDC's Administrator, Defendant Kurt Carlson. *See id.* at ¶¶ 11, 12, 14-17, 30-32. Carlson did not discuss the complaints with Sarnowski, and no disciplinary action was taken against him. *See id.* at ¶ 33. After his probationary period was over, Sarnowski became a union member, which contractually entitled him to union representation "in all matters pertaining to his employment contract." *Id.* at ¶ 29.

In June 2003, Carlson was removed from his position as GCDC Administrator after a suicide occurred at the GCDC. The state Department of Corrections ("DOC") temporarily took over management of the facility, with DOC-employee Defendant Mike Oliver assigned as one of Sarnowski's supervisors. *See id.* at ¶¶ 10, 36. Oliver allegedly instructed the GCDC correctional officers, including Sarnowski, to disregard GCDC standard operating procedures; not to dispense medications to inmates; to destroy inmate property; to abuse inmates; to deny inmates access to mail and to grievance procedures; and to lock down the inmates "without just cause." *See id.* at ¶ 36. Sarnowski complained about inmate abuse to DOC Defendants and began questioning their "authority and manners" and disregard of standard operating procedures. *See id.* at ¶¶ 44, 45. After Sarnowski continued to protest, he was "required to enter an administration office with one unknown DOC Defendant and Defendant Tavizon." *See id.* at ¶¶ 14, 46. The unidentified DOC Defendant denied Sarnowski's request for union representation, and he disciplined and sent Sarnowski home for protesting about violations of inmates' rights. *See id.* at ¶ 46. Sarnowski was

3

later again "sent home and disciplined for his whistle-blowing against certain Defendants." *Id.* at ¶ 47. And he was disciplined a third time and placed on administrative leave for having informed an inmate that the inmate's recourse for abuse against the DOC was to file a grievance and that, under the Prison Litigation Reform Act, inmates had to exhaust their administrative procedures before filing suit in court. *See id.* at ¶¶ 48, 49. Sarnowski contends that Oliver and "all Defendants" knew that Sarnowski was protected from "unjust discipline" by the GCDC procedures manual and his employment contract, but that they tortiously violated both the rules and the contract by defaming him in disciplinary records. *See id.* at ¶¶ 52-53.

After several weeks of administrative leave, Sarnowski was directed to return to work, where he "enrolled in a training program pertaining to juveniles." *Id.* at ¶ 60. He was placed back on duty at the GCDC after the DOC employees left, and reported to the new Administrator, Defendant Rocky Tafoya. A few days later, on August 28, 2003, Tafoya called Sarnowski into his office, along with Defendant Udero, who was at that time "acting as an administration employee." *Id.* at ¶ 62. Sarnowski again asked for union representation, but his request was denied. *See id.* at ¶ 63. Tafoya and Udero accused Sarnowski of falsifying his employment application and told him that "Grant County was terminating his employment for fraud" unless he voluntarily resigned. *Id.* at ¶¶ 66-67. After Sarnowski refused to resign, he was "ordered to return to his job duties until he received written and formal termination from the County Attorney and Manager." *Id.* at ¶ 68. Tafoya ordered Sarnowski to "remain in the control room, with the door locked and [] not [to] talk or have any contact whatsoever with any other officers at GCDC" or with inmates, which, according to Sarnowski, violated the procedures manual and his employment contract and was dangerous to Sarnowski and the other officers. *Id.* at ¶¶ 69-72. Sarnowski went into the control room. A few minutes later, Defendant Udero ordered Sarnowski to go home, without pay, and change into combat

4

boots and iron his uniform, and to return within an hour. *See id.* at ¶ 73. Sarnowski asked for clarification of the orders from Tafoya, who repeated the orders with the instruction for Sarnowski to "come back with a more professional attitude." *Id.* at ¶¶ 74-75.

Sarnowski left, but "became dangerously stressed and anxious" because he believed he "was being harassed and discriminated against without just cause." *Id.* at ¶ 76. When he checked his blood pressure on his home unit, he "felt that he was unable to safely return to work" and called the GCDC to "report off sick the remainder of his shift." *Id.* at ¶¶ 77-78. He informed Udero that he would let him know what Sarnowski's doctor decided. *Id.* at ¶ 78. Sarnowski's doctor advised him not to return to work for several days, and Sarnowski faxed the doctor's orders to the GCDC, but Tafoya and Udero refused him "sick leave pay and disciplined [him]." *Id.* at ¶¶ 79-80. When Sarnowski returned to work, Tafoya and Udero informed him that he was terminated, and Sarnowski later received a letter confirming his termination from Defendants Grant County Manager Harry Burgess and County Attorney Jack Hyatte. *See id.* at ¶¶ 81-82, 6; *and see* Doc. 27 at 3 (Plaintiff's response in opposition to motions to dismiss, identifying Burgess as the Grant County Manager).

Sarnowski filed a grievance challenging his termination. *See id.* at ¶ 83. Approximately one year later, an arbitration hearing was held. *Id.* at ¶ 86. The day before the hearing, Sarnowski was informed about the complaints filed in his personnel record during his probationary period by his fellow officers. *See id.* Sarnowski asserts that, although Burgess and Hyatte knew that the complaints were "fraudulently fabricated," they submitted them to the arbitrator. *See id.* at ¶ 89. The arbitrator considered the complaints as hearsay and gave "very little credit or weight" to them. *See id.* at ¶ 90. Although Sarnowski requested Defendant Carlson to appear at the hearing on his behalf to explain that Carlson did not give the complaints credence, Carlson did not do so. *See id.* at ¶¶ 92-94.

Sarnowski prevailed at the hearing and was reinstated to his position with back pay and accrued sick-leave and vacation-leave benefits in October 2004. *See id.* at ¶¶ 95-96; Pl.'s Supp. Resp. to Mot. to Dismiss (Doc. 21), Ex. 3 (1/5/2005 letter from Burgess to Sarnowski setting out accrued benefits). But although he complained about his personnel record, "the Defendants refused to correct it." Am. Compl. at ¶ 95. Sarnowski interpreted his reinstatement letter to require him "to return to work, without having a true and correct disciplinary record," *id.* at ¶ 96, because the letter warned that "the next disciplinary action taken against [him would] be discharge," *id.* at ¶ 97. Instead of returning to work when his sick and vacation-leave benefits expired in March 2005, Sarnowski "officially resigned under his doctor's orders due to 'work related stress and anxiety.'" Pl.'s Resp. to Mot. to Dismiss (Doc. 3), at 4; *see* Pl.'s Supp. Resp. to Mot. to Dismiss (Doc. 21), Ex. 1 (letter from Sarnowski's doctor dated 12/10/2004 stating that, in regard to Sarnowski's "continued employment" with the GCDC, because Sarnowski "expressed anxiety about his ability to work with certain personnel currently employed," it appeared in Sarnowski's "best interest to not be employed, at this time, with the [GCDC]."); Pl.'s Supp. Resp. to Mot. to Dismiss (Doc. 21), Ex. 4 (letter from GCDC administrator acknowledging receipt of Sarnowski's March 29, 2005 resignation letter and quoting Sarnowski as stating that "'due to legal and medical reasons, you are 'retiring' from your position from the [GCDC]'" and enclosing Sarnowski's final check).

Sarnowski asserts that Defendants Grant County Commissioners Arellano, Kelly, and Torres "were aware of the unjust and discriminatory conduct of Defendants Burgess and Hyatte, [but] took no action to correct the wrongs against [Sarnowski]." Am. Compl. at ¶ 99. In Counts One and Two of his amended complaint, Sarnowski asserts that all the Defendants' actions, in concert, deprived him of federal and state constitutional rights because they violated his rights under the union and employment contracts. *See id.* at ¶¶ 101-02, 105-111.

6

In Count Three of his amended complaint, Sarnowski alleges that Defendants Rivera, Tavizon, Sanchez, Fry, and McClarin committed fraud and conspiracy by not giving Sarnowski notice that they had filed complaints against him or an opportunity with union representation to protest and dispute their allegations. *See id.* at ¶¶ 114-115. He contends that Defendant Carlson breached his duty to assure that Sarnowski's "personnel record was true and correct." *Id.* at ¶ 116. He asserts that Defendant Udero "fraudulently and grossly[] took it upon himself to interpose these complaints into a disciplinary record which was incorrect, wanton, and with reckless disregard of the Plaintiff's Rights." *Id.* at ¶ 117. He contends that Defendants Udero and Tafoya knew that Grant County, Burgess, Hyatte, and the Commissioners would "rely upon the false and corrupt disciplinary record . . . to unjustly and unfairly terminate [him]." *Id.* at ¶ 119. He contends that these wrongs were deliberately conducted in a conspiracy to "break the union and violate Plaintiff's Contractual Rights with Defendant Grant County." *Id.* at ¶ 121.

Count Four alleges conversion. After Sarnowski was terminated, Grant County received a tax assessment lien from the IRS on monies owed to Sarnowski. *See id.* at ¶ 125. Despite the fact that Sarnowski disputed the validity of the tax assessment and no federal court order required Grant County to turn over Sarnowski's property, Grant County obeyed the lien by withholding $12,000 from Sarnowski's arbitration award and transferring it to the IRS. *See id.* at ¶¶ 126-129. Sarnowski contends that this action resulted in "conversion, theft, and extortion of the Plaintiff's Federal Property, Liberty and Contract Rights." *Id.* at ¶ 131.

Sarnowski seeks recovery of the $12,000 plus compensatory and punitive damages of $ 45,000,000 for physical and emotional distress caused by financial difficulties, loss of wages, and loss of medical benefits resulting from the above-described alleged torts and violation of his constitutional rights. *See id.* at ¶¶ 132, 136.

### III.  ANALYSIS

### A.  State constitutional and tort claims (Counts II & III).

In lieu of filing answers, Grant County and several of its employees filed several motions to dismiss.  Without discussing the facts alleged in Sarnowski's complaint or analyzing the employment status of the various County Defendants, the Defendants argue in a conclusory fashion that the New Mexico Tort Claims Act is the exclusive remedy against a New Mexico governmental entity and its employees for tort claims arising out of the scope of employment, and that sovereign immunity has not been waived for any of the tortious acts alleged in Counts Two, Three, and Four for which Sarnowski claims Grant County and its employees are liable.  *See* Mot. to Dismiss (Doc. 3) at 2-3; Mot. to Dismiss (Doc. 4) at 4.

Sarnowski did not respond to this argument in either of his first two responses.  In his response to the Defendants' second motion to dismiss, however, he briefly contends that immunity for law enforcement officers like the GCDC employees is waived under the New Mexico Tort Claims Act.  *See* Pl.'s Third Resp. (Doc. 27) at 11.  The Defendants did not address his contention in their reply brief, which was essentially the refiling of the second motion to dismiss with a different caption and a few minor word changes.  *See* Defs.' Reply (Doc. 30).

> The New Mexico Tort Claims Act provides
>
> the exclusive remedy against a governmental entity or public employee for any tort for which immunity has been waived under the Tort Claims Act and no other claim, civil action or proceeding for damages, by reason of the same occurrence, may be brought against a governmental entity or against the public employee or his estate whose act or omission gave rise to the suit or claim.

N.M.S.A. § 4-4-17.  Under the Act,

> [a] governmental entity and any public employee while acting within the scope of duty are granted immunity from liability for any tort except as waived by the New Mexico Religious Freedom Restoration Act and by Sections 41-4-5 through 41-4-12

> NMSA 1978. Waiver of this immunity shall be limited to and governed by the provisions of Sections 41-4-13 through 41-4-25 NMSA 1978, but the waiver of immunity provided in those sections does not waive immunity granted pursuant to the Governmental Immunity Act.

N.M.S.A § 41-4-4; *Weinstein v. City of Santa Fe ex rel. Santa Fe Police Dep't.*, 916 P.2d 1313, 1316 (N.M.1996) ("the Tort Claims Act provides governmental entities and public employees acting in their official capacities with immunity from tort suits unless the Act sets out a specific waiver of that immunity"). A statutory waiver of immunity exists, however, for law enforcement officers while acting in the scope of their employment.

> The immunity granted pursuant to Subsection A of Section 41-4-4 NMSA 1978 does not apply to liability for personal injury, bodily injury, wrongful death or property damage resulting from assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, defamation of character, violation of property rights or deprivation of any rights, privileges or immunities secured by the constitution and laws of the United States or New Mexico when caused by law enforcement officers while acting within the scope of their duties.

N.M.S.A. § 41-4-12. The New Mexico Supreme Court has held that a "county sheriff, his deputies and the jailers" at a county jail are "law enforcement" officers within the meaning of the Act, and that the waiver of immunity applies to negligent, as well as intentional, acts that result in injury. *Methola v. Eddy County*, 622 P.2d 234, 237-28 (N.M. 1980). And the New Mexico Court of Appeals has broadly construed this provision to also apply to negligent administrative acts by county detention center administrators or jailers that result in injury. *See Davis v. Bd. of County Com'rs of Dona Ana County*, 987 P.2d 1172 (N.M. Ct. App. 1999); *Abalos v. Bernalillo County Dist. Atty's Office*, 734 P.2d 794 (N.M. Ct. App. 1987). Because it is conceivable that the Grant County Defendants who were employed as correctional officers and/or administrators at the GCDC may fall within the waiver provided by § 41-4-12, and the Defendants failed to brief the issue, the Court will not grant the Defendants' motions to dismiss on the basis of sovereign immunity.

But even if the Defendants may be sued under § 41-4-12, "[e]xclusive original jurisdiction for any claim under the Tort Claims Act shall be in the [state] district courts of New Mexico," N.M.S.A. § 41-4-18, unless this Court has diversity jurisdiction or exercises its discretion to take pendent jurisdiction over state-law claims, as long as there is an independent basis for federal subject-matter jurisdiction. *See Estate of Harshman v. Jackson Hole Mountain Resort Corp.*, 379 F.3d 1161, 1164 (10th Cir. 2004) ("[Federal] District courts do not otherwise have jurisdiction to hear pendent state law claims but for their intertwinement with claims over which they have original jurisdiction."). The Court must, therefore, determine whether Sarnowski has stated a claim under § 1983, thereby establishing federal jurisdiction. *See United Mine Workers v. Gibbs*, 383 U.S. 715, 722-26 (1966) (noting that a federal court must have a substantial basis for federal jurisdiction in order to hear pendent state-law claims and stating that, "if the federal claims are dismissed before trial . . . the state claims should be dismissed as well").

## B. Conversion (Count IV).

Sarnowski seeks recovery from Grant County because it complied with a notice of levy issued by the IRS to collect back taxes. Accepting these allegations as true, Sarnowski cannot state an actionable claim for conversion against Grant County. Although the Defendants do not raise this basis for dismissal, in examining its subject-matter jurisdiction the Court notes that 26 U.S.C. § 6332(e) states:

> Any person in possession of (or obligated with respect to) property or rights to property subject to levy upon which a levy has been made who, upon demand by the Secretary, surrenders such property or right to property (or discharges such obligation) to the Secretary . . . shall be discharged from any obligation or liability to the delinquent taxpayer and any other person with respect to such property or rights to property arising from such surrender or payment.

This express language provides Grant County with a "complete defense" for complying with the IRS

tax levy, thereby barring any claim for conversion or other tort related to obeying the levy.  *See Kane v. Capital Guardian Trust Co.*, 145 F.3d 1218, 1224 (10th Cir. 1998).  Therefore, Sarnowski cannot state either a federal or a state claim for relief related to this set of facts.

**C.  Claims brought under § 1983 (Count I).**

Grant County first contended that Sarnowski's § 1983 claims against it must be dismissed because, although, according to his complaint, it appeared that he was "terminated for abandoning his job," " he did not return to work and failed to grieve the discipline given to him," and thus "failed to allege that [Grant County] had a policy or custom which caused the Plaintiff's alleged deprivation of rights."  Grant County's Mot. to Dismiss (Doc. 3) at 2, 4.  On these same facts, *see* Doc. 4 at 1-2 & n.2; Doc. 47 at 3-4; Doc. 55 at 3-7; Doc. 59 at 3-7, coupled with Sarnowski's subsequent clarification that he resigned and was *not* terminated, Defendants Arrellano, Kelly, Torres, Rivera, Carlson,  Sanchez, Hyatte (or Hiatt), Burgess, Frye, Oliver, and Udero contend that they are entitled to qualified immunity as a matter of law because Sarnowski alleged no constitutional deprivations or violations of clearly established federal law.

As mentioned above, Sarnowski vigorously contends that he "***had NOT been terminated for not returning to work, but had officially resigned*** . . . ."  Pl's Obj. & Mot. to Strike (Doc. 3) at 4 (bolding, italics, and capitalization in original).  In a second response, Sarnowski attached documents proving that he resigned, and he characterized the Defendants' suggestion that he was terminated as "scandalous" and "unsupported by any evidence whatsoever." Pl.'s Supp. Resp. (Doc. 21) at 3.  He also filed his amended complaint, wherein he alleged that the County's "policies, customs, employment contracts, . . . and decisions, made and enforced by the Defendants . . . constituted the moving force and the direct link between the County's policies and/or customs which the Plaintiff has alleged caused his injuries and damages . . . ."  Am. Compl. at ¶ 3.  The Court

11

assumes that, if given the opportunity, Sarnowski would amend his complaint to include his assertions that he voluntarily resigned from his position in 2005.

In his supplemental response Sarnowski has also clarified that his § 1983 claims are based on an alleged denial of due process in his 2003 disciplinary proceedings and termination (as opposed to his 2005 resignation) and in the 2004 arbitration proceedings that resulted in his reinstatement and award of back-pay and benefits. *See* Doc. 21 at 11-12 (complaining that "the City required him to prove that these charges were groundless in a proceeding where the City had total control over the process and better access to the evidence which formed the basis of the dismissal," despite the fact that New Mexico law requires "employers to bear the burden of proving misconduct where an employee was discharged for 'willful misconduct'"). Sarnowski also states that he "shall allege that Grant County Defendants may have failed to adequately train or supervise Supervisors who may be individually liable for the constitutional violations of their subordinates." *Id.* at 15. He states that, "[a]t stake here is a tenured public employee's constitutionally protected property right in maintaining his employment," *id.* at 17, and he implies that he did not have a "meaningful" administrative hearing because "fraudulent and perjured statements [were] used to deprive and violate Federal Constitutional Rights," *id.* at 21.

In their second motion to dismiss, the Defendants contend that Sarnowski has failed to "plead how these alleged fraudulent and tortious documents created a purported Constitutional violation." Defs' Second Mot. to Dismiss (Doc. 22) at 2. Defendants also continue to focus on Sarnowski's failure to allege that he "availed himself of any administrative procedures following his refusal to return to work in 2005," asserting that all the process that was due him was a "pretermination opportunity to respond, coupled with post-termination administrative procedures." *Id.* at 4-5. Defendants contend that any alleged substantive due process claim must fail because

Sarnowski has not alleged facts demonstrating "a degree of outrageousness and a magnitude of potential or actual harm that is truly conscious shocking." *Id.* at 5 (internal quotation marks omitted).

In his response to the Defendants' second motion to dismiss, Sarnowski clarifies a bit more what he is trying to allege in his complaint, again focusing on the acts occurring in 2002 through 2004: that "intangibles such as rights to continued employment without fraudulent and defamatory discipline records under a contract can be 'property rights'" that are constitutionally protected under the Due Process clause. Pl.'s Third Resp. (Doc. 27) at 8. And he continues to contend that his "case involves a public employee tortiously terminated by the use of fraudulent and fabricated discipline record." *Id.* at 9. He asserts that the "fraudulent and cover-up conspiracy alleged, which caused the Plaintiff to be unemployed for approximately a full year offends the conscience of trust in the people of New Mexico and offends accepted notions of fairness as to violate the constitutional mandate of due process." *Id.* The Court will analyze Sarnowski's § 1983 claims based on his clarification of the acts occurring in late 2002 or 2003 and 2004 that he contends caused his injuries.[1]

In order to state a § 1983 claim, "a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). "In order to state a claim against a government entity under Section 1983, [] a plaintiff must demonstrate

---

[1] Defendants may be basing their assumption that Sarnowski's claims are related to his 2005 resignation because he lists lost wages and lost medical benefits as part of his financial damages claim. *See* Am. Compl. at para. 133. Sarnowski already recovered lost wages, back pay, and accrued medical and vacation-leave benefits resulting from his 2003 termination and, of course, could not recover those losses again. But "a plaintiff who voluntarily resigns cannot claim that he or she was constructively discharged," *Exum v. U.S. Olympic Comm.*, 389 F.3d 1130, 1135 (10th Cir. 2004), and Sarnowski, therefore, would have no claim for lost wages or medical benefits resulting from not having the job he resigned from in 2005.

the existence of a policy or custom precipitating the plaintiff's injury." *Casey v. W. Las Vegas Indep. Sch. Dist.*, 473 F.3d 1323, 1334 n.12 (10th Cir. 2007).

Sarnowski alleges five acts by Grant County employees that he contends violated his right to constitutional due process: the late 2002 or early 2003 administrative filing of peer complaints without notice to him; the June 2003 discipline and termination without union representation; the submission of the peer complaints for consideration at his 2004 administrative hearing by Burgess and Hyatte with the Commissioners' apparent knowledge; Carlson's refusal to testify on Sarnowski's behalf at his 2004 administrative hearing; and Grant County's maintenance of the peer complaints and disciplinary record in Sarnowski's personnel file after he was reinstated in October 2004.

Sarnowski has no constitutional or federal right to be free from internal employment complaints filed by his peers concerning his work performance, even if he considers those complaints to be erroneous or conspiratorial. "Section 1983 imposes liability for violation of rights protected by the Constitution, not for violations of duties of care arising out of tort law." *Baker v. McCollan*, 443 U.S. 137, 146 (1979); *Stidham v. Peace Officer Standards & Training*, 265 F.3d 1144, 1153 (10th Cir. 2001) (noting that defamation is not sufficient to establish a constitutional violation).

Sarnowski has cited no authority, and the Court is aware of none, for the proposition that an individual has a constitutional right to continued employment without having fraudulent and defamatory statements or discipline records in his personnel file or that an individual has a constitutional right *not* to have complaints that he considers to be false be mentioned in internal administrative hearings. Liberally interpreting his complaint, if Sarnowski is attempting to allege a due-process claim related to an infringement upon a "liberty interest in [his] good name and

reputation as it affects [his] property interest in continued employment," *Stidham*, 265 F.3d at 1153 (internal quotation marks omitted), the Court concludes that Sarnowski still fails to state a claim.

> To establish this type of liberty deprivation, a plaintiff must allege and prove four elements: First, . . . the statements must impugn the good name, reputation, honor, or integrity of the employee. Second, the statements must be false. Third, the statements must occur in the course of terminating the employee *or must foreclose other employment opportunities*. And fourth, the statements must be published.

*Id.* (internal quotation marks omitted) (italics in original). The amended complaint establishes that the peer officers' statements were not made in the course of terminating Sarkowski but, rather, were filed during his probationary period when he was being evaluated for permanent employment. They were not published to the public or to potential subsequent employers. In fact, accepting the allegations in the amended complaint as true, the statements were internally administratively filed, considered, and rejected, by both Carlson and the administrative hearing officer, as a basis for discipline or termination, and were not used to foreclose his employment opportunities, as demonstrated by his reinstatement. Sarnowski, therefore, has not stated a § 1983 claim for these acts against Grant County or the individual GCDC officers acting in their official capacities.[2]

Notwithstanding his state contract rights, Sarnowski had no constitutional or federal right to have Carlson testify on his behalf or to have union representation at his disciplinary and termination hearings. "To assess whether an individual was denied procedural due process, courts

---

[2] Further, even if Sarnowski had met all four of these requirements, thereby establishing the existence of a liberty interest, the due process protections of the Fourteenth Amendment would simply be triggered and he would then also have to show that he was not afforded an adequate name-clearing hearing. *See Wisconsin v. Constantineau*, 400 U.S. 433, 437 (1971); *Jensen v. Redevelopment Agency*, 998 F.2d 1550, 1558-59 (10th Cir. 1993). Sarnowski's complaint establishes that he was given an adequate name-clearing hearing and that the administrative law judge rejected the peer-officer complaints as a meritorious basis for termination. That does not mean, however, that the hearing officer found the complaints to be false or fraudulent.

15

must engage in a two-step inquiry: (1) did the individual possess a protected interest such that the due process protections were applicable; and, if so, then (2) was the individual afforded an appropriate level of process." *Montgomery v. City of Ardmore*, 365 F.3d 926, 935 (10th Cir. 2004) (internal quotation marks omitted). When an employee has a protected property interest in his job, the employer must provide at least minimal pre-termination procedural protections and adequate post-termination procedures. *See id.*; *Calhoun v. Gaines*, 982 F.2d 1470, 1476 (10th Cir. 1992) (holding that "some form of pre-termination hearing, plus a full-blown adversarial post-termination hearing," are required when a property interest in continued employment is at stake). "A brief face-to-face meeting with a supervisor provides sufficient notice and opportunity to respond to satisfy [minimal] pre-termination due process requirements . . . ." *West v. Grand County*, 967 F.2d 362, 368 (10th Cir. 1992). And the Tenth Circuit has held that a grievance procedure provided by a collective bargaining agreement, such as the one Sarnowski engaged in, can satisfy a plaintiff's entitlement to post-deprivation due process. *See Montgomery*, 365 F.3d at 938.

Sarnowski's complaint establishes that he had a pre-termination, face-to-face meeting with Tafoya, at which time he was given notice of the reason why the County was going to terminate him and an opportunity to contest the allegation that he had falsified his application. He later was afforded a full-blown hearing with an opportunity to call witnesses, to rebut his employer's claims, and to testify. He prevailed at this hearing and was reinstated with back pay and benefits. As a matter of law, the process the GCDC gave to Sarnowski satisfied the due- process requirements of the Fourteenth Amendment, notwithstanding whether he may have had a contractual, but non-constitutional, right to union representation at his pre-termination meetings.

Sarnowski has failed to state a claim for violation of § 1983 against Grant County or any of the individual defendants, and that claim must be dismissed. Accordingly, the Court may not take

pendent jurisdiction over Sarnowski's state-law claims against Grant County and its employees for potential violations of the state constitution or for alleged torts. *See Estate of Harshman*, 379 F.3d at 1164. Any potential state-law claims must be brought in the state courts and, therefore, will be dismissed without prejudice.

**D. Motion to strike.**

Sarnowski urges dismissal of Grant County's motion to dismiss and asks for rule 11 sanctions on two bases: Grant County's attorneys failed to enter an appearance as required by D.N.M.L.R.-Civ. 83.4; and Grant County made unsupported statements in its motion to dismiss about Sarnowski allegedly being terminated a second time for abandoning his job, which he contends violates D.N.M.L.R.-Civ. 7.5 and is bad-faith conduct.

Grant County admits that its attorneys failed to follow the rules regarding entering an appearance, but contend that Sarnowski has not been harmed because the attorneys submitted as part of their signed motions all the substantive information required in an entry of appearance. Grant County also contends that it was not making allegations of fact in its motion, but, rather, was simply testing the legal sufficiency of Sarnowski's claims by drawing its "facts" from Sarnowski's pleadings.

Because Grant County's attorney substantively complied with submitting information regarding the entry-of-appearance requirements and Sarnowski has not been prejudiced by its failures, the Court will not strike the motion to dismiss. Further, having again reviewed Sarnowski's complaint, although the Court agrees that Sarnowski never expressly claimed he had been terminated a second time, as noted in footnote 1, *supra*, his claims for relief were inconsistent with his allegations, which made Grant County's erroneous assumptions about what Sarnowski was claiming fairly reasonable. The Court will deny the motions to strike and will not impose sanctions.

**IT IS ORDERED** that Grant County's Second Motion to Dismiss (Doc. 21) is granted in part and denied in part. Sarnowski's complaint is dismissed without prejudice. Sarnowski's two Motions to Strike (Docs. 3 & 21) are denied. As all claims have been dismissed, the remaining pending motions are denied as moot.

**Dated this 29th day of September, 2007.**

_____
MARTHA VAZQUEZ
UNITED STATES DISTRICT JUDGE

Attorney for Plaintiff:

    Dave Sarnowski, *pro se*

Attorneys for Defendants:

    Slease & Martinez, P.A.
    Jonlyn M. Martinez